IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| HAMMOND DEVELOPMENT INTERNATIONAL, INC., <br><br>          Plaintiff, <br><br>                    -vs.- <br><br> AMAZON.COM, INC., <br> AMAZON.COM LLC, <br> AMAZON.COM SERVICES, INC., AND <br> AMAZON WEB SERVICES, INC., <br><br>          Defendants. | Case No. 6:19-CV-00355-ADA |

**<ins>DEFENDANTS' OPPOSED MOTION FOR INTRA-DISTRICT TRANSFER OF VENUE TO THE AUSTIN DIVISION OF THE WESTERN DISTRICT OF TEXAS</ins>**

## TABLE OF CONTENTS

**Page No.**

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT .............................................................................................................. 4

I.      LEGAL STANDARD ...................................................................................... 4

II.     THIS CASE SHOULD BE TRANSFERRED TO THE AUSTIN DIVISION. ................. 5

      A.     HDI Could Have Filed This Case in Austin. ................................................. 5

      B.     The Austin Division Is Clearly More Convenient Than the Waco Division. ......... 5

            1.     Factors Favoring Transfer ......................................................... 5

                    a)     Access to Sources of Proof Is Easier In the Austin Division. ......... 6

                    b)     The Cost of Attendance for Willing Witnesses Is Less in the Austin Division.. ....................................................................... 7

                    c)     Practical Factors That Make Trial of a Case Easy, Expeditious and Inexpensive Favor Transfer to Austin. ....................................... 8

                    d)     Local Interests Favor Transfer to Austin. ....................................... 9

            2.     The Remaining Factors Are Neutral. .......................................... 9

CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page No(s).**

*Auto-Dril, Inc. v. Pason Sys. USA Corp.*,
    No. 6:15-CV-00093, 2015 WL 12780779 (W.D. Tex. June 29, 2015) ....................................9

*Cadle Co. v. Keyser*,
    No. 14-CV-00758, 2015 WL 764256 (W.D. Tex. Feb. 23, 2015)............................................2

*Datascape, Ltd v. Dell Techs.*,
    No. 19-CV-00129-ADA, ECF No. 44 (W.D. Tex. June 7, 2019) ................................1, 4, 5, 9

*Eastep v. City of Odessa*,
    No. 17-CV-00059, 2017 WL 2537358 (W.D. Tex. June 12, 2017) ..........................................2

*Frac Shack Inc. v. Alaska Fuel Distribs. Inc.*,
    No. 18-CV-00660, ECF No. 28 (W.D. Tex. Jan. 29, 2019) .....................................................1

*McCloud v. McClinton Energy Grp., L.L.C.*,
    No. 14-CV-00620, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014)..........................................2

*Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,
    No. 14-CV-00464, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014)............................ *passim*

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ...................................................................................4, 5, 7

*In re Volkswagen of Am. Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..................................................................................................4

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)...............................................................................................8

## OTHER AUTHORITIES

28 U.S.C. §1404...........................................................................................................1, 4, 5

Fed. R. Civ. P. 45 .........................................................................................................................9

This case has no relevant connections to the Waco Division.  Amazon.com, Inc., Amazon.com LLC,[1] Amazon.com Services, Inc., and Amazon Web Services, Inc. ("Amazon Defendants")[2] therefore seek an intra-district transfer to the Austin Division under 28 U.S.C. §1404(a).  Counsel for the parties have conferred in good faith on the substance of this motion but were unable to reach agreement.  Plaintiff's counsel has indicated that it plans to oppose the motion.

## INTRODUCTION

Plaintiff Hammond Development International, Inc. ("Plaintiff" or "HDI") filed this case in the wrong division.  Plaintiff's principal place of business is in Dallas and it does not allege that it has a presence or that it does business in the Waco Division.  (*See* Compl. at ¶ 2.)  For example, Plaintiff filed this case in Waco despite alleging that the Amazon Defendants maintain a physical presence in Austin and without pleading any presence in Waco.  (Compl. at ¶¶ 2, 9-14.)  Nor could it, because none of the Amazon Defendants has any relevant operations in the Waco Division.  In contrast, two of the Amazon Defendants employ more than 1200 employees in Austin, including engineers with knowledge of the technical features of the accused products.

Courts in this district have frequently transferred cases within the Western District of Texas when a case had little or no connection to the initial forum and the majority of the events and witnesses are located elsewhere in the district.  *See, e.g.*, *Datascape, Ltd v. Dell Techs.*, No. 19-CV-00129-ADA, ECF No. 44 (W.D. Tex. June 7, 2019) (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288-90 (5th Cir. 2013)); *see also*, *Mimedx Grp., Inc. v. Texas Human Biologics, Ltd.*,  No. 14-CV-00464, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014); *Frac Shack Inc. v. Alaska Fuel*

---

[1] Amazon.com LLC ceased operations by January 1, 2018, when it was merged into Amazon.com Services, Inc.

[2] The Amazon Defendants join together solely for judicial efficiency as this Motion does not raise issues unique to any single defendant.  The Amazon Defendants do not concede that it is proper to group them together in any other context.

-1-

*Distribs. Inc.*, No. 18-CV-00660, ECF No. 28 (W.D. Tex. Jan. 29, 2019); *McCloud v. McClinton Energy Grp., L.L.C.*, No. 14-CV-00620, 2014 WL 6388417 (W.D. Tex. Nov. 14, 2014); *Eastep v. City of Odessa*, No. 17-CV-00059, 2017 WL 2537358 (W.D. Tex. June 12, 2017); *Cadle Co. v. Keyser*, No. 14-CV-00758, 2015 WL 764256 (W.D. Tex. Feb. 23, 2015).

The Austin Division is clearly a more convenient forum for this case than Waco, to which neither Amazon nor HDI has any relevant connection. The Court should therefore transfer this case to Austin for the convenience of the parties and witnesses.

## STATEMENT OF FACTS

HDI alleges that Amazon's Alexa-enabled devices (the "Alexa Devices") infringe eight patents, including United States Patent No. 9,264,483 ("the '483 Patent") and seven patents that claim priority to the '483 Patent ("Patents-in-Suit"). (Compl. at ¶ 15; 65-67.) HDI filed its complaint in Waco, alleging that venue is proper in the Western District of Texas because "Amazon"[3] has a regular and established place of business in Austin. (*Id.* at ¶¶ 11-12.)

The Amazon Defendants have no relevant facilities in Waco and are unaware of any employees in the Waco area. (Thompson Decl. ¶¶ 8-10.) Rather, two of the Amazon Defendants together employ more than 1200 employees at its two office buildings at 11501 and 11601 Alterra Parkway, Austin, Texas 78758 (the "Austin Offices"). (*Id.* ¶ 3.) These Austin-based employees work on many different teams, including the DeviceOS and Echo Platform Software teams. (*Id.* at ¶¶ 4-7.) The DeviceOS team designs and develops the operating system for the accused Echo and Fire TV products. (*Id.* at ¶ 4.) The DeviceOS team in Austin comprises 40 engineers of which 11 focus specifically on connectivity features of the accused devices. (*Id.* at ¶ 4.) The Echo Platform Software team includes 13 engineers in Austin who work on the platform layer of

---

[3] Plaintiff did not attempt to differentiate between any of the Amazon Defendants, nor did it allege which entities were responsible for which aspects of the alleged infringement.

the Echo devices, which is generally responsible for communications between hardware compo-

nents.  (*Id.* at ¶ 5.)  Documents produced by these Austin-based DeviceOS and Echo Platform

Software teams are primarily located in Austin and California.  (*Id.* at ¶¶ 6-7.)

The Austin-based engineers have knowledge of technical features relevant to the limita-

tions of the asserted patents.  For example, connectivity features of the accused devices are rele-

vant to the asserted patents.  During prosecution of the '483 Patent, the Board reversed the Ex-

aminer's claim rejections based on a publication by Rao.  (Nash Decl. Ex. 1 at 2-3.)  The Board

found that Rao did not disclose the limitation of claim 1 "wherein the at least one application

server is adapted to execute the identified application remote from the at least one communica-

tion device and to establish the communication session with the at least one communication de-

vice."  (*Id.* at 3-5.)  Nearly all of the asserted claims contain this limitation.  Witnesses familiar

with the accused Alexa devices' connectivity features are therefore likely to be important to the

infringement issues raised in this case.  Similarly, technical documents relevant to such connec-

tivity features will also likely be relevant.  Several engineers on the DeviceOS and Echo Plat-

form Software teams specializing in connectivity features are located in Austin.  (Thompson

Decl. ¶¶ 4-5.)  None of the Amazon Defendants have any relevant technical operations or em-

ployees in the Waco Division.  (*Id.* at ¶¶ 8-10.)

Like the Amazon Defendants, HDI also has no relevant connection to the Waco Division.

HDI alleges that its principal place of business is in Dallas.  (Comp. at ¶ 2.)  The Public Infor-

mation Report for HDI shows that its registered agent, president and director, Daniel Hammond,

lives in Dallas. (Nash Decl. Ex. 2.)  Mr. Hammond is also the named inventor of all eight assert-

ed patents, and both HDI and Mr. Hammond list a Dallas address on the patents.  (Compl. Exs.

1-8.) The complaint does not allege that HDI conducts any business or has any connections to the Waco Division or that any relevant acts occurred in there.  (*Id*. at ¶¶ 10-13.)

## ARGUMENT

### I.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or *division* where it might have been brought." 28 U.S.C. § 1404(a) (emphasis added).  As the Fifth Circuit held in *Radmax*, the § 1404(a) analysis applies not only when a defendant seeks transfer to another judicial district, but also when a defendant seeks transfer to another division within the same district.  720 F.3d at 288.

In determining whether transfer is appropriate under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue."  *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008).  If so, courts weigh the relative convenience of the venue based on: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Radmax,* 720 F.3d at 288 (citing *Volkswagen*, 545 F.3d at 315).

In *Radmax*, the Fifth Circuit ordered an intra-district transfer because the "facts and circumstances of [the] case [were] wholly grounded in the transferee forum" and the "case [had] no connection to the [transferor forum]" after it found that three factors supported the transfer and the remaining five factors were neutral.  *Id*. at 290.  Similarly, in *Datascape*, this Court ordered an intra-district transfer from Waco to Austin when access to sources of proof was relatively eas-

ier in Austin, no employees of the defendant were located in the Waco division, and other factors either favored transfer or were neutral.  No. 19-CV-00129-ADA, slip op. at 3-6.

## II.     THIS CASE SHOULD BE TRANSFERRED TO THE AUSTIN DIVISION.

### A.     HDI Could Have Filed This Case in Austin.

The first question under § 1404(a) is whether the destination venue would have been a proper venue for the filing of the lawsuit.  Because two of the Amazon Defendants have offices and employees in Austin and, for purposes of this case only, admit that venue is proper in the Western District of Texas, this case could have been brought in the Austin Division.  *See Mimedx*, 2014 WL 12479284, at *1.

### B.     The Austin Division Is Clearly More Convenient Than the Waco Division.

The relevant factors show that Austin is clearly more convenient than Waco.  Four factors favor transfer, four are neutral, and none support remaining in Waco.  Transfer is therefore warranted.  *See Radmax*, 720 F.3d at 290 (compelling intra-district transfer where three factors supported transfer and five were neutral); *Mimedx*, 2014 WL 12479284, at *3 (ordering transfer where four factors favored transfer, four were neutral, and none favored the original venue).

#### 1.     Factors Favoring Transfer

Neither the Amazon Defendants nor HDI has any connection to the Waco Division.  All of the relevant documents and witnesses in the Western District of Texas are located in Austin.  (Thompson Decl. ¶¶ 4-10.)  Accordingly, the relative ease of access to sources of proof, the cost of attendance for willing witnesses, other practical problems, and Austin's local interest in this case all strongly favor transfer.

### a)   Access to Sources of Proof Is Easier In the Austin Division.

Neither the Amazon Defendants nor HDI have relevant operations in the Waco Division. Accordingly, there are no relevant documents or witnesses in the Waco division.  The relevant evidence and witnesses from the Amazon Defendants are primarily located in Austin and Sunnyvale, California.  Courts have recognized that in "patent infringement cases, 'the bulk of the relevant evidence usually comes from the accused infringer.... Consequently, the place where the defendant's documents are kept weigh[s] in favor of transfer to that location." *Mimedx*, 2014 WL 12479284, at *2 (quoting *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)). Engineers familiar with the relevant features of the accused devices work in Austin.  (Thompson Decl. ¶¶ 4-5.)  Likewise, any relevant documents from those engineers are in Austin.  (*Id*. at ¶ 6.)

The prosecution history of the Patents-in-Suit further suggests that a key issue in this case will be whether and how a "communication session" is established in the accused devices.  Engineers working in the DeviceOS team in Austin are familiar with the connectivity aspects of the operating systems of the accused devices.  (*Id*. at ¶ 4.)  Similarly, engineers working in the Echo Platform Software team have knowledge about connectivity aspects of the board support packages of the accused devices.  (*Id*. at ¶ 5.)  These engineers are potential witnesses in this case and the relevant documents for these engineering teams are easier to access from their Austin offices.[4]  No such witnesses or documents are located in the Waco division.  (*Id*. at ¶ 8.)

To the extent there are relevant witnesses or documents from HDI, they are likely located in Dallas where the inventor of the asserted patents lives and where HDI maintains its principal place of business. (Compl. at ¶ 2; Nash Decl. Ex. 2.)  None of HDI's witnesses or documents appear to be located in the Waco division.  Accordingly, this factor strongly supports transfer to the

---

[4] Additional potentially relevant witnesses are located in California, which, as discussed below, furthers supports transfer to Austin.

Austin Division.  *Radmax*, 720 F.3d at 288 ("Any such inconvenience may well be slight, but …
the question is *relative* ease of access, not *absolute* ease of access.").

**b)**      **The Cost of Attendance for Willing
Witnesses Is Less in the Austin Division.**

The third factor "considers the cost of attendance of all willing witnesses." *Mimedx*, 2014
WL 12479284, at *2.  Any relevant Amazon Defendant witnesses in this district, such as the en-
gineers that work on the DeviceOS and Echo Platform Software teams, reside and work in the
Austin Division.  (Thompson Decl. ¶¶ 4-5.)  Requiring any such witnesses to travel 1.5-2 hours
each way to Waco for hearings or trial would place an unnecessary burden on the witnesses that
can be avoided if the case were in Austin.  For example, because the witness order and testimony
schedule at trial can be unpredictable, witnesses may need to be on-call while waiting to testify.
If trial is held in Austin, these on-call witnesses can continue working at their regular office
while they wait.  They would not have that same opportunity if trial is held in Waco.

Relevant Amazon Defendant witnesses may reside in Sunnyvale or Seattle. (*Id.* ¶¶ 5, 7.)
Even for witnesses residing in Sunnyvale or Seattle, travel to Austin would impose less costs and
be less disruptive than Waco because: (a) direct flights are available to Austin but not to Waco
(*compare* Nash Decl. Exs. 3, 5 *with* Exs. 4, 6); and (b) the witnesses could work in the Austin
offices while waiting to testify.

To the extent there are HDI witnesses in Dallas whose inconvenience might be increased
if trial were held in Austin, that inconvenience should be discounted for three reasons.  First,
HDI caused its own inconvenience by filing in this District, rather than Dallas.  If convenience to
its witnesses were paramount, HDI could have filed this suit in Dallas.  By filing in Waco, HDI
has shown that access to the judicial resources in this District outweighed any resulting incon-
venience to its witnesses.  With that choice made, HDI cannot complain that an intra-district

-7-

transfer to Austin would increase that inconvenience, particularly where the requested transfer would substantially reduce the inconvenience for the Amazon Defendants.

Second, as this Court has observed, in "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *Mimedx*, 2014 WL 12479284, at *2 (quoting *Nintendo*, 589 F.3d at 1199).  Accordingly, although the identity and exact number of witnesses likely to be presented at trial cannot be determined at this early stage of the case, it is reasonable to assume that the number of witnesses will be greater for the Amazon Defendants than for HDI.  Accordingly, a transfer to Austin will decrease the collective overall cost and inconvenience to the parties because there are likely to be more relevant documents and witnesses produced by the Amazon Defendants.

Finally, there are direct flights from Dallas to Austin priced under $200 with a total travel time of approximately one hour.  (Nash Decl. Ex. 7.)  There are also non-stop flights from San Jose and Seattle to Austin.  (*Id.* Exs. 3-6.) A similar search on Expedia shows no direct flights between Waco and Austin.  The one-stop flights from Austin to Waco (which connect through Dallas) report an average travel time of 3-4 hours and a price exceeding $500.  (*Id*. Ex. 8.)  The savings of time and expense for both parties strongly favors transfer to Austin.

### c)      Practical Factors That Make Trial of a Case Easy, Expeditious and Inexpensive Favor Transfer to Austin.

This factor favors transfer when the case is at its earliest stages.  *Mimedx*, 2014 WL 12479284, at *2.  Here, this case is still at its earliest stages and the Court has not yet entered a scheduling order.  HDI's co-pending action against Google in the Waco Division (*see* Case No. 19-cv-00356) would not justify denying transfer.  That HDI sued another defendant in the same forum does not "negate[] the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor."  *In re Zimmer Holdings,*

*Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).  This Court has concluded that there would be "little if any risk of judicial waste or inefficiency" associated with the transfer of a case with three other actions in the same court that shared some of the same asserted patents.  *Datascape*, No. 19-CV-00129-ADA, slip op. at 5.  Accordingly, this factor also favors transfer to Austin, particularly so if Google also seeks a transfer to Austin.

### d)      Local Interests Favor Transfer to Austin.

Austin also has a considerable interest in deciding this case.  Two of the Amazon Defendants operate facilities and employ more than 1200 people in Austin.  Austin therefore has substantially more interest and connection to the outcome of this litigation than Waco, where no party has a presence.  *Mimedx*, 2014 WL 12479284, at *3 ("Defendants and their employees are local to the San Antonio area. The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests."); *Datascape*, No. 19-CV-00129-ADA, slip op. at 5-6 (local interest favors transfer from Waco to Austin when "outcome of the instant action likely affects local Austin interests more acutely than local Waco interests.").

### 2.      The Remaining Factors Are Neutral.

The remaining factors are neutral.  The Amazon Defendants are unaware of any third-party witnesses unwilling to attend trial.  "However, courts, including courts within this district, have found this factor to be neutral 'where the parties have not alleged that non-party witnesses are unwilling to testify.'"  *Auto-Dril, Inc. v. Pason Sys. USA Corp.*, No. 6:15-CV-00093, 2015 WL 12780779, at *3 (W.D. Tex. June 29, 2015).  Even if there were a witness who could not be persuaded to attend trial voluntarily, a non-party witness may still be compelled to travel to Austin so long as they are not subject to "substantial expense."  Fed. R. Civ. P. 45(c)(1)(B)(ii).

Because the parties do not seek reassignment to another judge, there is no dispute that both divisions are equally familiar with the patent laws, are subject to the same local rules and apply Fifth Circuit law.  These factors are therefore also neutral.

## CONCLUSION

This case has no ties to Waco.  All the private and public factors either favor transfer to Austin, or are neutral.  Accordingly, the Court should transfer this case to Austin.

August 27, 2019

Respectfully submitted,

By:  */s/ Brian C. Nash*
Brian C. Nash
Texas Bar No. 24051103
brian.nash@pillsburylaw.com
PILLSBURY WINTHROP SHAW
PITTMAN LLP
401 Congress Avenue, Suite 1700
Austin, TX 78701-3797
Phone: (512) 580-9629
Fax: (512) 580-9601

*Of Counsel:*

Joseph R. Re (*pro hac vice*)
Joseph S. Cianfrani (*pro hac vice*)
Jeremy A. Anapol (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile:  949-760-9502
joe.re@knobbe.com
joe.cianfrani@knobbe.com
jeremy.anapol@knobbe.com

Colin B. Heideman (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Telephone: 206-405-2000
Facsimile:  206-405-2001
colin.heideman@knobbe.com

*Attorney for Defendants Amazon.com, Inc., Amazon.com LLC, Amazon.com Services, Inc., and Amazon Web Services, Inc.*

## CERTIFICATE OF CONFERENCE

In accordance with Local Rule CV-7(i), counsel for the parties conferred on August 9, 2019 regarding the subject matter of this motion and counsel for Plaintiff indicated that Plaintiff is opposed to the motion.

*/s/ Brian C. Nash*
Brian C. Nash

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on August 27, 2019.

*/s/ Brian C. Nash*
Brian C. Nash
